## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| HOLLY SUGAR CORPORATION, <u>et al.</u> ) | |
| ) | |
|     Plaintiffs, ) | |
| ) | |
|     v. ) | |
| ) | Civil Action No. 03-1739 (RBW) |
| MICHAEL JOHANNS, Secretary, ) | |
| U.S. Department of Agriculture, <u>et al.</u> ) | |
| ) | |
|     Defendants. ) | |
| _____ ) | |

### <u>MEMORANDUM OPINION</u>

On August 15, 2003, the plaintiffs, a group of sugar processing companies, brought suit

challenging the defendant's interpretation of § 163 of the Federal Agricultural Improvement and

Reform Act of 1996 ("the Act"). Amended Complaint for Declaratory Judgment, Restitution,

and Injunctive Relief ("Amended Compl.") at 2. The plaintiffs' claims were contained in four

counts, each contending that the defendants' decision to continue to impose a one percent

"surcharge" on sugar loans did not properly reflect a 2002 amendment to the Act and was

therefore illegal. Amended Compl. ¶¶ 45-73. Count I alleged that "[t]he interest rate for sugar

loans violates the act." <u>Id.</u> at 16. In support of this allegation, the plaintiffs contended that the

Act "explicitly exempt[ed] CCC [sugar loans] from the interest rate surcharge." <u>Id.</u> ¶ 46.

Therefore, according to the plaintiffs, the CCC violated the Act "by applying the interest

surcharge" to sugar loans. <u>Id.</u> ¶ 48. Count II alleged that "[t]he interest rate surcharge on sugar

loans is arbitrary, capricious and an abuse of discretion," <u>id.</u> at 16, because the CCC "deliberately

evade[d] the intent of Congress to exempt such loans from the previous surcharge," <u>id.</u> ¶ 51, and

the CCC's explanation for doing so "contradict[ed] the plain language of the Act as amended."
Id. ¶ 53.  Count III alleged that "[t]he interest rate surcharge on sugar loans result[ed] in unjust
enrichment of the defendants."  Id. at 18.  The plaintiffs opined, on this score, that the
amendment to the Act "represented a decision by Congress not to collect" revenue, by way of the
one percent interest rate surcharge, on sugar loans.  Id. ¶ 57.  By purportedly acting contrary to
this decision, the plaintiffs argued that, "the defendants [sought] to wrongfully augment the
income of the [CCC] by collecting a charge," id. ¶ 59, which the defendants "knew or should
have known [was] unauthorized and illegal."  Id. ¶ 60.  Finally, Count IV alleged that "[t]he
interest rate surcharge on sugar loans is an unconstitutional tax."  Id. at 20.  The plaintiffs argued
in this last claim that the interest rate surcharge, because it was imposed "for the purpose of
defraying the expenses of government or governmental undertakings," amounted to a tax, id. ¶
65, and "[b]y implementing this tax in defiance of clear statutory language and Congressional
intent, [the] defendants ha[d] usurped the authority to levy taxes that is reserved for Congress by .
. . the Constitution."  Id. ¶ 67.

On September 15, 2004, this Court granted summary judgment to the plaintiffs on Counts
I and II.  Holly Sugar Corp v. Veneman, 335 F. Supp. 2d 100, 110 (D.D.C. 2004) ("Holly Sugar
I").  On January 6, 2005, on the plaintiff's motion for reconsideration, this Court issued an
amended opinion which further granted summary judgment to the plaintiffs on Count III.  Holly
Sugar Corp v. Veneman, 355 F. Supp. 2d 181, 193 (D.D.C. 2005) ("Holly Sugar II").  However,
on February 7, 2006, the District of Columbia Circuit reversed this Court's rulings.  Holly Sugar
Corp v. Johanns, 437 F.3d 1210, 1215 (D.C. Cir. 2006) ("Holly Sugar III").  In response to the
Circuit Court's decision, the defendants have filed a Motion for Entry of Judgment ("Defs.'

Mot.") with this Court.  The plaintiffs responded with a Motion for Summary Judgment ("Pls.'

Mot. Summ. J."), contending that counts II and IV of the Complaint remain unresolved and they

are entitled to summary judgment on these claims.  Additionally, the plaintiffs have filed a

Motion for a Preliminary Injunction ("Pls.' Mot. Prelim. Inj."), requesting that "the Court grant a

Preliminary Injunction against the collection of surcharges until the deposition of the remaining

issues outstanding in this case."[1]  Pls.' Mot. Prelim. Inj. at 1.  For the reasons set forth below, this

Court grants the government's Motion For Entry of Judgment and denies both motions filed by

the plaintiffs.

## I.   <u>Legal Analysis</u>

A.   **The Defendants' Motion For Entry of Judgment and the Plaintiffs' Motion for Summary Judgment**

In reversing the judgment of this Court, the District of Columbia Circuit did not enter a

final judgment for the defendants.  <u>See</u> <u>Holly Sugar III</u>, 437 F.3d at 1210.  The plaintiffs claim

that the Court of Appeals did not resolve all of their claims, but simply reversed this Court's

grant of summary judgment, and, therefore, "the case awaits a decision of this Court on the issues

not decided by the Court of Appeals."  Pls.' Opp'n at 5.  One of those issues is purportedly the

claim asserted in Count IV of their Complaint.  Specifically, the plaintiffs contend that "neither

this Court nor the Court of Appeals have addressed the constitutional issue of whether the

---

[1]  The following papers have been submitted in connection with this motion: (1) the defendants' Memorandum in Support of Motion for Entry of Judgment ("Defs.' Mem."); (2) the plaintiffs' Memorandum in Opposition to the Defendants' Motion for Entry of Judgment and in Support of Summary Judgment in Favor of the Plaintiffs ("Pls.' Opp'n"); (3) the defendants' Opposition to Preliminary Injunction ("Defs.' Opp'n Prelim. Inj."); (4) the plaintiffs' Reply to Defendants' Opposition to Plaintiffs' Motion for a Preliminary Injunction ("Pls.' Reply Prelim. Inj.");  (5) the Defendants' Combined Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment and Reply in Support of Defendants' Motion for Entry of Judgment ("Defs.' Reply"); and (6) the Plaintiffs' Reply to Defendants' Opposition to their Motion for Summary Judgment ("Pls.' Reply").

imposition of the surcharge by the executive branch encroaches on the powers delegated to the

Congress by the Constitution." <u>Id.</u>  And the second issue which the plaintiffs contend remains

unresolved is the claim advanced in Count II of their Complaint.  <u>Id.</u> at 4.  Although this Court's

earlier grant of summary judgment on Count II was subsequently reversed by the Court of

Appeals, <u>id.</u> at 4, the plaintiffs claim that Count II was only partially addressed by the Court of

Appeals and that "the issue of whether the interest rate selected by the government for sugar

loans was arbitrary and capricious" remains unresolved.  <u>Id.</u> at 7.  The plaintiffs now request that

this Court award them summary judgment on these two allegedly unresolved counts of their

Complaint.

The defendants respond, noting that "[n]owhere in the appellate court's docket, judgment,

or opinion did the [District of Columbia] Circuit order the case remanded for further actions or

proceedings of any kind by the District Court."  Defs.' Mem. at 3 (citing <u>Holly Sugar III</u>, 437

F.3d at 1210; Defs.' Mem., Ex. 2 at 7-8 (D.C. Circuit docket); Defs.' Mem., Ex. 3 (D.C. Circuit

Judgment).  Rather, the defendants argue that Counts II and IV were both resolved with finality

by the Court of Appeals.  Defs.' Mem. at 5, 8.  Moreover, the defendants contend, if Count IV

remained available for review by this Court following the Court of Appeal's ruling, that result

would have had the effect of rendering this Court's amended decision granting summary

judgment to the plaintiffs on counts I, II, and III, <u>see</u> <u>Holly Sugar II</u>, 355 F. Supp. 2d at 190-96,

interlocutory, which would in turn have precluded the Court of Appeals from exercising

jurisdiction over the defendants' appeal. Pls.' Opp'n at 6-7.  Therefore, the defendants argue, no

further action is required of this Court other than the "mere formality" of entering judgment in

their favor.  Defs.' Mem. at 14.  Thus, before this Court can address the merits of the plaintiffs'

Motion for Summary Judgment, it must first determine whether the claims asserted in Counts II

and IV in any respect remain unresolved.

1.      **The Plaintiffs' Unconstitutional Tax Claim**

On appeal, the plaintiffs attempted to classify the one percent "surcharge" on commodity

loans as a tax imposed by Congress rather than a user fee imposed by the CCC.  Defs.' Mem.,

Ex. 7 (Appellants Brf. at 24).  The plaintiffs argued that the surcharge could not be classified as a

user fee, which is "valid so long as the agency levies 'specific charges for specific services to

specific individuals or companies.'"  Id.  Rather, the plaintiffs opined, the one percent

"surcharge" on commodity loans from the CCC was originally put in place "to raise revenue to

help balance the federal government budget."  Id.  As such, the plaintiffs contended that the one

percent "surcharge," to the extent that it is applied to commodity loans at the direction of

Congress, amounted to a tax.  Id.  The plaintiffs then concluded that because Congress, through

the 2002 amendment to the Act, mandated that sugar was no longer to be classified as a

commodity, the CCC's decision to continue to place a one percent "surcharge" on sugar loans

constituted the imposition of an unconstitutional tax, as only Congress has the authority to levy

taxes.  Id.  This argument was substantially identical to the assertions advanced in Count IV of

the plaintiffs' Complaint.  Amended Compl. ¶¶ 64-73.

In rejecting the plaintiffs' position, the Court of Appeals provided the following brief

assessment of the plaintiffs' unconstitutional tax claim: "[T]he processors contend that the rate

cannot be defended as a form of user fee.  But because the rate is an interest rate, not a fee, this

argument is irrelevant."  Holly Sugar III, 437 F.3d at 1215.  In their motion, the plaintiffs admit

that the Court of Appeals was presented with the unconstitutional tax claim, but assert that it

"chose not to discuss the constitutional issue and never mentions the U.S. Constitution . . . or the word 'tax' anywhere in its opinion."  Pls.' Opp'n at 6.  The defendants respond by asserting that "[t]he D.C. Circuit squarely addressed the unconstitutional tax claim . . . . "  Defs.' Reply at 2.

It is clear, and the plaintiffs do not contend otherwise, that the sugar processors argued the unconstitutional tax claim before the Court of Appeals.  Thus, the issue before this Court now is whether the Court of Appeals addressed the matter in such a way that precludes this Court from considering the unconstitutional tax claim.  "Under the mandate rule, 'an inferior court has no power or authority to deviate from the mandate issued by an appellate court.'" Indep. Petroleum Ass'n of America v. Babbitt, 235 F.3d 588, 596-97 (D.C. Cir. 2001) (quoting Briggs v. Pennsylvania R.R. Co., 334 U.S. 304, 306 (1948)).  Therefore, this Court may only consider the unconstitutional tax claim in the absence of a definitive ruling on the issue by the Court of Appeals.  From the record before it, the Court must conclude that the Court of Appeals did rule definitively, if only briefly, on the unconstitutional tax claim.

While it is true that the Court of Appeals did not decide whether the challenged one percent fee charged by the defendants is unconstitutional, it did not specifically address the issue because it considered the distinction between a user fee and tax "irrelevant" in this case.  Holly Sugar III, 437 F.3d at 1215.  However, the Court of Appeals was clearly of the view that interest rates are distinguishable from user fees.  Id.  Thus, because the one percent assessment at issue is was deemed to be an interest rate rather than a user fee, the Court of Appeals found no reason to examine whether the assessment amounted to a tax and, if so, whether such a tax was constitutional.  Id.  And it is worth noting that the plaintiffs have failed to provide to either the Court of Appeals or this Court, nor has this Court been able to find, any case authority holding

6

that interest rates are interchangeable for user fees in determining whether an assessment

represents an unconstitutional tax.  That the Court of Appeals found the plaintiffs'

unconstitutional tax claim unworthy of extensive discussion is not a basis for this Court to now

consider the claim.  Thus, the Court cannot address the plaintiffs' unconstitutional tax claim

because it was previously heard and disposed of by the Court of Appeals.

> **2.      The Plaintiffs' Arbitrary and Capricious Claim**

The plaintiffs contend that the Court of Appeals "did not address the issue of whether the

interest rate selected by the government for sugar loans was arbitrary and capricious."  Pls.'

Opp'n at 7.  As support for this contention, the plaintiffs point to the Court of Appeals' statement

that "[t]he processors nowhere argue that the CCC, in lumping sugar in with other agricultural

commodities, acted arbitrarily and capriciously."  Id. at 9 (quoting Holly Sugar III, 437 F.3d at

1215).  The plaintiffs claim that the Circuit Court "could not address the issue because it was not

decided in the District Court," id. at 7, citing this Court's ruling that "the defendants' additional

one percent interest rate assessment on the sugar loans made to the plaintiffs is contrary to the

express language of the 2002 Act and is 'arbitrary, capricious, . . . or otherwise not in accordance

with [the] law' and therefore a violation of the APA, 5 U.S.C. § 706(2)(A)."  Holly Sugar I, 335

F. Supp. 2d at 110.

In taking this position, the plaintiffs attempt to draw a distinction between this Court's

ruling that the CCC's interpretation of the 2002 amendment was arbitrary and capricious, since

over turned by the Court of Appeals, see  Holly Sugar III, 437 F.3d at 1215, and the issue of

whether the CCC, which retained the authority to set the sugar loan interest rate despite the 2002

amendment, acted arbitrarily and capriciously by setting it at one percent.  Such a distinction

clearly exists, as noted by the Court of Appeals.  Id.  However, the reason this Court did not

address the latter issue is because the plaintiffs failed to raise this claim in their Complaint.  In

Count II of the Complaint, the plaintiffs consistently contend that the CCC's decision to impose a

one percent interest rate was arbitrary and capricious because it violated the 2002 amendment.

Amended Compl. ¶¶ 51-55.  For example, the plaintiffs alleged that "maintaining the interest

surcharge contradicts the plain language of the Act as amended and the clear Congressional

intent to treat [sugar loans] differently than loans for other agricultural commodities."  Id. ¶ 53

(emphasis added).  Furthermore, the plaintiffs alleged that "[t]he defendants have not explained

why they have not eliminated the interest surcharge in implementing the 2002 Farm Bill," id. at ¶

52, and that "[t]he CCC regulations implemented by [the] defendants nullify the statutory

amendment to the Act made by the 2002 Farm Bill and render the amendment meaningless," id.

¶ 54 (emphasis added).  Finally, the Complaint alleges that "the CCC ignored explicit

Congressional instructions to exempt sugar loans from the surcharge," and that the "defendants

acted arbitrarily and capriciously by flaunting the congressional intent behind the 2002 Farm

Bill," id. ¶ 55 (emphasis added).  Thus, all of the allegations in the Complaint assert that the

CCC acted arbitrarily and capriciously because it chose to continue to impose a one percent

interest rate in violation of the 2002 amendment.  This conclusion is supported by the fact that

the plaintiffs' papers filed with this Court, which brought about the issuance of the order that was

reversed by the Court of Appeals, focus only on the claim that the CCC's interpretation of the

2002 amendment was arbitrary and capricious.[2]  In sum, nowhere in the Complaint, or in the

---

[2] For example, the plaintiffs assert that the "CCC's construction of the statute is arbitrary and capricious because it is an impossible interpretation," Plaintiffs' Motion for Summary Judgment and Opposition to Defendants'
(continued...)

briefs that were submitted to this Court, did the plaintiffs allege that in the event the CCC

retained the authority to impose an interest rate on sugar loans, its decision to maintain the one

percent interest rate was arbitrary and capricious.

The plaintiffs also argue that they raised this issue in their appellate brief.  Pls. Reply at 8.

However, the Circuit Court clearly did not feel that this was the case, having concluded that the

plaintiffs "challenge only the agency's <u>authority</u> to set such a rate, not its <u>decision</u> to do so."

<u>Holly Sugar III</u>, 437 F.3d at 1215 (emphasis in original).  The plaintiffs may therefore not return

to this Court to argue a claim that was not in their Complaint.  Accordingly, the Court finds that

the arbitrary and capricious claim pled in the Complaint has already been addressed by the Court

of Appeals and cannot be relitigated by this Court.

**B.**     **The Plaintiffs' Motion For a Preliminary Injunction**

Because this Court concludes that judgment should be entered for the government, it is

not necessary for the Court to address the merits of plaintiffs' request for a preliminary injunction

in regards to the claims alleged in the Complaint.  Furthermore, to the extent that the plaintiffs'

request for a preliminary injunction is based on claims not found in the Complaint, this Court

lacks jurisdiction to entertain the request for such relief.

---

[2](...continued)
Motion to Dismiss at 27, and "[t]he CCC's application of the one percent surcharge to sugar loans is manifestly
contrary to the 2002 Farm Bill," <u>id.</u> at 33.  The plaintiffs further stated that "[r]eviewing courts are not obliged to
stand aside and rubber-stamp their affirmance of administrative decisions that they deem inconsistent with a statutory
mandate . . . ."  <u>Id.</u> at 34.  In their reply, the plaintiffs continued to insist that "[t]he 2002 amendment does not
convert the mandatory surcharge into a discretionary surcharge,"  Plaintiffs' Reply to Defendants' Opposition to
Plaintiffs' Motion for Summary Judgment at 4, by contending that "[t]he defendants' preposterous argument that the
2002 Amendment converted the mandatory surcharge into a discretionary surcharge pays no heed to the canons of
statutory construction in parsing the language of the amendment for a grant of such discretionary authority . . . ," <u>id.</u>
at 5.

The preliminary injunction sought by the plaintiffs is based upon an allegation that the addendum to the sugar loans that the sugar processors signed in order to receive loans since the beginning of the 2004 crop year represented an invalid contract.  Pls.' Mot. Prelim. Inj. at 2-3. The addendum to the sugar loans stated that "[i]n the event the defendants appeal this holding and subsequently prevail, you will owe to CCC an additional 1% interest if any repayments occur on the above numbered loan."  Id. at 3.  The addendum also stated "I have read and understand the manner in which the CCC intends to assess interest on this loan."  Id.  Sugar processors were required to sign the addendum in order to receive sugar loans.  Id.   On May 4, 2006, the Farm Service Agency of the USDA sent letters to the plaintiffs announcing the CCC's intention, given the defendant's success on appeal, to collect the one percent interest surcharge for the 2005 crop year.  Id. at 2.  The plaintiffs contend that the letters sent to sugar processors "falsely claim that the processors agreed to pay additional interest on 2005-crop year loans."  Id. at 3 (internal quotation marks omitted).  The plaintiffs maintain that by signing the addendums, "[t]he processors simply acknowledged that they had read and understood the CCC policy statement, but did not state that they agreed to pay additional interest."  Id.  The plaintiffs now seek injunctive relief precluding the defendants "from taking any actions related to assessing or collecting interest surcharges on sugar loans or any rate of interest greater than the cost of borrowing funds from the U.S. Treasury during the pendency of these proceedings and thereby preserving the status quo."  Id. at 15-16.

As the issues raised by the plaintiffs in their request for a preliminary injunction are focused on an alleged contractual dispute with the government, they are clearly unrelated to the issues alleged in the Complaint.  Indeed, the addendums to sugar loans were created in response

to the plaintiffs' success in this Court, and therefore the contractual issue could not have existed

when the plaintiffs filed their Complaint.  "Even when a motion for a preliminary injunction is

predicated on a complaint, if the motion raises issues different from those presented in the

complaint, the court has no jurisdiction over the motion."  Adair v. England, 193 F. Supp. 2d

196, 200 (D.D.C. 2002) (citing Devose v. Herrington, 42 F.3d 470, 471 (8th Cir. 1994)) (other

citations omitted).  While the All Writs Act, 28 U.S.C. § 1651(a), may provide a court with

jurisdiction to review a motion for a preliminary injunction when the motion is closely related to

the facts stipulated in the complaint, Adair, 193 F. Supp. 2d at 200, its applicability is limited to

situations in which a court must exercise its "inherent power to preserve its process and to

prevent and rectify punishment of those who appeared before it."  Equal Employment

Opportunity Comm'n v. Locals 14 and 15, Int'l Union of Operating Eng'rs, 438 F. Supp. 876,

879 (S.D.N.Y. 1977).  Thus, a court may entertain a motion for a preliminary injunction that is

based on facts or allegations not found in the complaint only when the relief sought is to "prevent

or remedy actions designed to or having the effect of deterring the use of the courts, or punishing

one for such use . . . ."  Id. at 880.  As the plaintiffs do not contend that they are being prevented

or deterred from using the courts, the Court does not have jurisdiction to consider the plaintiffs'

motion for a preliminary injunction.[3]

---

[3] Because the facts surrounding the alleged contractual dispute are unrelated to the claims disposed of in this opinion, the plaintiffs' recourse is to seek relief through a new complaint based on the facts that gave rise to the contractual dispute.  However, it would appear that the United States Court of Federal Claims, rather than this Court, would have jurisdiction over such an action involving an alleged contractual dispute with the federal government for an amount that exceeds $10,000.  See 28 U.S.C. § 1491 (2000); 28 U.S.C. § 1346 (2000); Hercules, Inc. v. United States, 516 U.S. 417, 423 (1996); Bowen v. Massachusetts., 487 U.S. 879, 915 (1988); Stockton E. Water Dist. v. United States, 70 Fed. Cl. 515, 526 (2006).

## II.   <u>Conclusion</u>

For the aforementioned reasons, this Court grants the defendants' Motion for Entry of

Judgment.  Accordingly, the plaintiffs' Motion for Summary Judgment must be denied.

Furthermore, the plaintiffs' Motion for a Preliminary Injunction is also denied.

**SO ORDERED** on  this 1st day of August, 2006.[4]

REGGIE B. WALTON
United States District Judge

---

[4] An Order consistent with the Court's ruling accompanies this Memorandum Opinion.